```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA


 THURMAN WILLIAMS, individually    .
 and on behalf of all others       .
 similarly situated, et al.,       .  CA No. 20-0890 (RC)
                                   .
         Plaintiffs,               .
                                   .
    v.                             .  Washington, D.C.
                                   .  Friday, April 17, 2020
 FEDERAL BUREAU OF PRISONS, et al.,.  11:34 a.m.
                                   .
         Defendants.               .
 . . . . . . . . . . . . . . . . . .


                    TRANSCRIPT OF TELEPHONIC
                 PRELIMINARY INJUNCTION HEARING
              BEFORE THE HONORABLE RUDOLPH CONTRERAS
                   UNITED STATES DISTRICT JUDGE


 APPEARANCES:

 For Plaintiffs:              KEVIN H. METZ, ESQ.
                              CLAYTON D. LAFORGE, ESQ.
                              Latham & Watkins LLP
                              555 11th Street NW
                              Suite 1000
                              Washington, DC 20004-1304
                              (202) 637-2200

 For Federal Defendants:      JOHNNY H. WALKER III, AUSA
                              U.S. Attorney's Office
                              555 Fourth Street NW
                              Washington, DC 20530
                              (202) 252-2575

 For Defendant                ANDREW J. SAINDON, ESQ.
 District of Columbia:        Office of Attorney General
                              for the District of Columbia
                              441 4th Street NW
                              Suite 630 South
                              Washington, DC 20001
                              (202) 724-6643
```

```
For Defendant Hope Village:   KRISTEN E. ITTIG, ESQ.
                              Arnold & Porter Kay Scholer LLP
                              601 Massachusetts Avenue NW
                              Washington, DC 20001
                              (202) 942-5767

Court Reporter:               BRYAN A. WAYNE, RPR, CRR
                              U.S. Courthouse, Room 4704-A
                              333 Constitution Avenue NW
                              Washington, DC 20001
                              (202) 354-3186
```

Proceedings reported by stenotype shorthand.
Transcript produced by computer-aided transcription.

```
 1                       P R O C E E D I N G S
 2              THE DEPUTY CLERK:  This is Civil Action 20-890,
 3   Thurman Williams, et al., versus Federal Bureau of Prisons and
 4   Hope Village, et al.  For plaintiffs I have Mr. Clayton LaForge
 5   and Mr. Kevin Metz.  For defendants I have Mr. Johnny Walker,
 6   Mr. Andrew Saindon, and Ms. Kristen Ittig.  All parties are
 7   present.
 8              THE COURT:  Good morning.  All right.  Let's start
 9   with Mr. Metz.  I gather from your filing last night that
10   you've withdrawn your motion for P.I.?
11              MR. METZ:  Yes, Your Honor.  Based on the filing
12   of the Bureau of Prisons yesterday morning, we are heartened
13   by the actions that they have been taking this week and in
14   the last seven to ten days.  We expect that those actions will
15   provide the relief that we are seeking over the next 13 days,
16   by the end of April.
17              THE COURT:  All right.  How about your motion for
18   inspection?  Have you withdrawn -- or do you propose to withdraw
19   that as well?
20              MR. METZ:  We have not withdrawn that, Your Honor.
21   I think that also can be withdrawn.  I say that with a little
22   bit of caution because what they're doing now we think will
23   provide the relief that we're seeking.  If there were to be a
24   change of course -- if, for instance, they are not releasing
25   people and that the conditions remain there for longer than
```

1    the next several days, then we believe that there may be a
2    need for further litigation for a preliminary injunction.
3         But at this time I think we can withdraw that motion,
4    or suspend it, perhaps.  I don't think that an inspection
5    will be necessary if, as the Bureau of Prisons says, they are
6    transferring their 160 or so people out primarily to home
7    confinement or to other facilities.
8         We would like to continue to monitor the situation.
9    It is very dynamic, as I'm sure Your Honor appreciates.
10   So we would like to be able to monitor the situation there,
11   but at this time I don't see a need for the inspection.
12             THE COURT:  Okay.  So let's withdraw that motion
13   as well, subject to refiling if necessary.
14             MR. METZ:  Thank you, Your Honor.
15             THE COURT:  All right.  Let's start with BOP.
16   Are you on the line, Mr. Walker?
17             MR. WALKER:  Yes, Your Honor.
18             THE COURT:  All right.  Tell me what BOP's plans
19   are for the wind-down.  First let me ask you this question,
20   Mr. Walker:  Are there any ongoing discussions to extend the
21   contract even for a limited period?
22             MR. WALKER:  Not with Hope Village, Your Honor.  No.
23             THE COURT:  Okay.  So you're assuring me that there
24   will be no surprises that on, you know, April 30th I won't be
25   told, well, it turns out we were keeping people there for

1  another 30 days?  You can assure me of that?

2  MR. WALKER:  We would both be surprised by that,
3  Your Honor.  I have no reason to believe that's the case.

4  THE COURT:  Okay.  Can you make an inquiry, please,
5  and alert the Court if there are ongoing discussions I should
6  be aware of?

7  MR. WALKER:  Certainly, Your Honor.

8  THE COURT:  Okay.  All right.  Go ahead.

9  MR. WALKER:  Yes, Your Honor.  So as we described
10 in our filings, Bureau of Prisons is currently trying to put
11 in place an electronic monitoring contract.  My understanding
12 is that such a contract was awarded last night.  We expect
13 performance on that contract to begin on April 26, and what that
14 will allow the Bureau to do is to maximize the flexibility with
15 which they can place people in home confinement without the need
16 for other means of accountability monitoring such as a landline
17 or a cell phone or something else like that.

18      It will also allow the Bureau of Prisons to more directly
19 place individuals on home confinement without the involvement of
20 Hope Village.  So the goal is to use that electronic monitoring
21 contract to really maximize as many people as possible on home
22 confinement before the wind-down of Hope Village on the 30th.

23 THE COURT:  Okay.  So when can we expect -- you know,
24 today people have been moved four or five at a time on a good
25 day.  When can we expect those numbers to increase significantly?

1      MR. WALKER:  The hope is that those will increase
2 significantly once performance on the electronic monitoring
3 contract begins on April 26.
4      THE COURT:  So not -- April 26, I think, is Sunday.
5 So not until then?  So not this coming with week but the week
6 after that?  Is that right?
7      MR. WALKER:  That's correct, Your Honor.  I think what
8 you've seen in the reports that we've been filing every day thus
9 far is every home confinement referral that has been submitted
10 to BOP through Hope Village has been readily approved.
11   The BOP will continue, in the meantime, reviewing home
12 confinement referrals that are submitted to it and approving
13 them as appropriate, but I would expect the rate of individuals
14 referred to home confinement to increase once the Bureau has
15 that additional flexibility with the electronic monitoring.
16      THE COURT:  Okay.  So you expect that, for next week,
17 I can still expect to see four to five folks a day until the
18 26th, at which point the numbers will increase significantly.
19 Is that right?
20      MR. WALKER:  I would hope so, Your Honor.  The number
21 of home confinement referrals that the Bureau sees now is
22 limited through Hope Village.  So I think there's some -- it
23 doesn't have total control over that prospect, but I would
24 expect to see the numbers increase the week of the 27th, yes.
25      THE COURT:  Okay.  So is part of Hope Village's

1     contract based on a head count?
2              MR. WALKER:  I'm not sure, Your Honor.
3              THE COURT:  All right.
4         Ms. Ittig, do you know the answer to that question?
5              MS. ITTIG:  Your Honor, my understanding -- and
6     I could confirm it for you -- is that there is a head-count
7     element to the contract, yes.
8              THE COURT:  All right.
9         Okay.  Mr. Walker, there's a certain financial disincentive
10    for Hope Village to push people out quickly, so I want BOP to
11    stay on top of that.  If next week we see the numbers drop from
12    four or five a day to zero, we're going to have another hearing.
13             MR. WALKER:  Understood, Your Honor.
14             THE COURT:  All right.
15        Anything else that BOP wants to share today?
16             MR. WALKER:  I'm happy to answer any other questions
17    the Court may have, but we did submit our supplement noting the
18    efforts that have been made to date.  As I note, the only other
19    development since we submitted that is that the electronic
20    monitoring contract has been awarded, and we are on track to
21    begin service on April 26.
22             THE COURT:  Okay.  So let me hear from Hope Village
23    as to how it's proceeding with the wind-down.
24             MS. ITTIG:  Yes, Your Honor.  This is Kristen Ittig
25    for Hope Village.  The wind-down is proceeding as quickly as

1   possible.  Hope Village's incentive, despite the head-count
2   issue that you noted, is to have everyone removed from the
3   facility as soon as possible so that it can do a complete
4   wind-down when its contract expires on April 30.
5       As of right now, the requirements for a landline and for
6   the other procedures that will apparently be obviated when the
7   electronic monitoring comes into place, those requirements are
8   still in place, and that does slow down the process.  But Hope
9   Village is continuing to work to process the home confinement
10  applications as quickly as possible.
11      There are some setbacks in that there are things that
12  happen, like families have alerted Hope Village that they don't
13  want the residents to come to their homes anymore.  So that
14  delays things as well, but Hope Village continues to process
15  those as quickly as possible in conjunction with BOP.
16          THE COURT:  Now, let me ask you this question.  The
17  various papers were not crystal clear.  The District's papers
18  seem to indicate that they were getting everyone out by April 30.
19  I thought Hope Village's language was more careful than that
20  because the contract seems to go beyond April 30.  What is Hope
21  Village's understanding as to what will happen with the
22  Department of Corrections folks?
23          MS. ITTIG:  Your Honor, it would be great to have
24  the Department of Corrections folks speak to that as well, but
25  my understanding is that the contracting officer has committed

1  to working to have those folks out by the 30th of April as well.
2  We should definitely ask the Department of Corrections for their
3  view on that as well, but my understanding is that every effort
4  is being made to connect with the judges in those cases so that
5  they can be removed by the 30th as well.
6              THE COURT:  Okay.  Mr. Saindon?
7              MR. SAINDON:  Thank you, Your Honor.  Yes.  I believe
8  Ms. Ittig is correct.  Because the DOC folks at Hope Village now
9  are all under pretrial detention, we do have to coordinate with
10 the sentencing judges to work that out.  But, again, we are
11 operating under the assumption that the Hope Village will close
12 April 30th, and they're looking for alternative arrangements for
13 the 14 or so folks that are there from the DOC.
14             THE COURT:  All right.  And from Hope Village, in
15 your papers, you went into a little bit about some changes to
16 how the meals were served, which I still have some concerns
17 about.  Can you explain those to me?
18             MS. ITTIG:  Sure, Your Honor.  So Hope Village
19 originally had the one dining room, now has two dining rooms,
20 and has opened up the timing for lunch and dinner half an hour
21 earlier than it had previously been opened to allow some more
22 spacing and timing for when people come in to have their meals.
23 So there's more time allotted for the meals so people don't need
24 to be in and out in as quick a fashion, and there is additional
25 space as the numbers have gone down.

```
 1              But the point that we were making in our papers,
 2   Your Honor, is that even with extra space being provided and
 3   direction being given about social distancing, in many instances
 4   the residents still decide that they want to sit closely
 5   together, even though they don't need to sit closely together.
 6              THE COURT:  Okay.  As the numbers continue to dwindle,
 7   does Hope Village intend, before April 30, to reduce the dining
 8   space from the two back to the one?
 9              MS. ITTIG:  I do not know of any plan to reduce that
10   space right now, no.  There's no plan to reduce it.
11              THE COURT:  Okay.  I will ask you, to the extent that
12   such a plan comes into being, that you immediately alert the
13   Court and the parties.
14              MS. ITTIG:  Very good.
15              THE COURT:  Let me ask you this question:
16         With respect the dining areas, does Hope Village have
17   security video footage of that?
18              MS. ITTIG:  I can check on that question, Your Honor.
19   I do not know the answer, but I can certainly let you know if
20   there is security footage of that.  Security has certainly been
21   an issue because there's been a good deal of unrest among the
22   resident population.  I do have to advise of that.
23              THE COURT:  Okay.  If there is such footage from this
24   week, I would like it submitted for *in camera* review.  I would
25   like to see the conditions of that myself, if possible, without
```

1   a site visit.
2           MS. ITTIG:  Okay.  I will see what I can learn
3   on that, Your Honor, and then we will come back to you.
4           THE COURT:  Okay.  So if there is anything for me to
5   review in that respect, I would like it submitted for *in camera*
6   review by Monday.
7           MS. ITTIG:  Okay.
8           THE COURT:  Anything else that Hope Village wants to
9   add today?
10          MS. ITTIG:  No, Your Honor.  Just here to answer the
11  questions that you might have about operations, and we're glad
12  to provide whatever information.  I do note that, on the dining
13  front, I will check to see if there is security footage.  I
14  would also note that the BOP reports indicate that they noted
15  that they saw empty tables in the dining space when they did
16  their visit.
17          THE COURT:  I read that; I just want to confirm.
18          MS. ITTIG:  Yep.  Got it.
19          THE COURT:  As they used to say during the SALT
20  missile negotiations, "trust but verify."
21          MS. ITTIG:  Yes.
22          THE COURT:  All right.  How do the parties want to
23  proceed?  Do we want to set another telephone hearing for next
24  week, or do we want to see how things go based on the daily
25  reports?

1           MR. METZ:  Your Honor, this is Kevin Metz on behalf
2   of the plaintiffs.  I think another court hearing is a good
3   idea.  We're available at any time next week.  On behalf of
4   plaintiffs, our main concern is that these prisoners be moved
5   out and into home confinement or into other safe places as
6   quickly as possible.  I think Bureau of Prisons has started
7   that, and we'd like to see a lot of progress made next week.
8           I think -- you know, we have the commitment, I think, now
9   from the Bureau of Prisons to do that, and I think -- you know,
10  the proof is in the pudding.  I'd like to be able to continue
11  to monitor it for the next several days and see that it's
12  happening, and in particular see that these residents are being
13  sent either to home confinement or to other appropriate
14  community-based facilities in or close to D.C.
15          We are concerned that some may be sent to farther away
16  halfway houses or be sent back to secure facilities where the
17  problem will be actually as bad or worse.  So I think we'd like
18  to keep an eye on it, and I think setting a status conference
19  for next week at your convenience is a good idea.
20          THE COURT:  All right.
21      How about next Friday, same time, the 24th, at 11:30?
22          MR. METZ:  Plaintiffs are available.
23          MS. ITTIG:  Hope Village is available.
24          MR. WALKER:  BOP is also available, Your Honor.
25          THE COURT:  Okay.  So we'll set it for Friday the 24th

1    at 11:30.

2        So, Mr. Metz, last week we briefly discussed whether your
3    firm was going to represent any of the folks individually.  Has
4    any of that occurred other than the two plaintiffs, one whose
5    claim seems to be moot?

6            MS. LEE:  Your Honor, I'm sorry to interrupt.  I
7    had spoken earlier before the call had begun.  My name is
8    [indiscernible] Lee, and I represent one of the individuals;
9    and I work for [indiscernible], and I wanted to ask the Court
10   permission to enter appearance because my admission to the DDC
11   is still pending; and I'm licensed in D.C., so I cannot submit a
12   pro hac vice motion.  But I do represent one of the individuals.

13           THE COURT:  And which individual is that?

14           MS. LEE:  His name is Larry Dowdy.  D-O-w-d-y.

15           MR. METZ:  I'm sorry, Your Honor.  This is Kevin Metz.
16   Just to clarify, that's not one of our plaintiffs, one of the
17   main plaintiffs in the lawsuit.  I believe it's another resident
18   of Hope Village.

19           THE COURT:  Right.  And, Ms. Lee, what is the status
20   of that?  Is he one of the Department of Corrections folks, or
21   is he a BOP person?

22           MS. LEE:  I believe -- we're still finding out more
23   about his status, but I believe he is one of the Bureau of
24   Prisons individuals.

25           THE COURT:  Okay.  At the tail end of his term?

1           MS. LEE:  Correct.  I think his release date was
2    initially set for June 9.
3           THE COURT:  Okay.
4        All right.  So, Mr. Metz, to answer my previous question,
5    has your firm endeavored to add any other individual plaintiffs?
6           MR. METZ:  Your Honor, co-counsel of the Washington
7    Lawyers' Committee and the ACLU D.C., as well as my firm, have
8    been in contact with numerous residents at Hope Village and
9    providing assistance where we can.
10       It is our hope, no pun intended, that the BOP's plans to
11   move people out rapidly and to utilize electronic monitoring
12   will address the concerns for the whole number of people all
13   at once and that there won't need to be individualized actions
14   or motions or anything like that.  But we are in contact with
15   numerous individuals at Hope Village.
16          THE COURT:  All right.  Well, the folks you may want
17   to pay some particular attention to are the D.C. Department of
18   Corrections folks that, if they are not put in home confinement,
19   will end up back at the D.C. jail, and we all know what the
20   conditions are there.
21       They all have counsel, presumably, in their criminal cases
22   that can file briefs with whatever judge is overseeing their
23   criminal case, but that might be the group that may need the
24   most assistance in the short run, may be able to use the most
25   assistance in the short run, before they become part of Judge

1    Kollar-Kotelly's case.
2              MR. METZ:  Yes, Your Honor, and we are aware that
3    all of those individuals have defense counsel.  Through the
4    Washington Lawyers' Committee, I've been in touch with many
5    of their counsel, and we'll do what we can.
6              THE COURT:  Sure.  The defense counsel are very,
7    very busy these days, so they might be amenable to help.
8         All right.  Anything that we need to accomplish between now
9    and next Friday other than continuing to reduce the population
10   size?
11             MR. METZ:  Nothing for plaintiffs, Your Honor.
12             THE COURT:  Mr. Walker?
13             MR. WALKER:  Nothing for the BOP, Your Honor.
14             THE COURT:  Mr. Saindon?
15             MR. SAINDON:  Nothing for the District.  Thank you,
16   Your Honor.
17             THE COURT:  Ms. Ittig?
18             MS. ITTIG:  No.  Thank you, Your Honor.
19             THE COURT:  All right.  Thank --
20             MR. WALKER:  I'm sorry, Your Honor.  If I may, this
21   is Johnny Walker for the Bureau of Prisons.  I did get a follow-
22   up communication from the Bureau of Prisons during the hearing,
23   just to go back to one of the questions that you asked.  The BOP
24   does not foresee any circumstances in which the contract with
25   Hope Village will continue past April 30.  I can confirm that.

1        THE COURT:  Okay.  That's helpful.
2  All right.  Thank you.  Everyone is excused.
3        (Proceedings adjourned at 11:55 a.m.)

* * * * * *

CERTIFICATE

I, BRYAN A. WAYNE, Official Court Reporter, certify that the foregoing pages are a correct transcript from the record of proceedings in the above-entitled matter.

*Bryan A. Wayne*
BRYAN A. WAYNE